# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

|                                      |     |                                         |
| ------------------------------------ | --- | --------------------------------------- |
|                                      | )   |                                         |
| **UNITED STATES OF AMERICA**         | )   |                                         |
|                                      | )   | Case No. 2:04CR00009                    |
|                                      | )   |                                         |
| v.                                   | )   | **OPINION**                             |
|                                      | )   |                                         |
|                                      | )   | By: James P. Jones                      |
| **ROBERT BRADLEY SCOTT**,            | )   | Chief United States District Judge      |
|                                      | )   |                                         |
| Defendant.                           | )   |                                         |

*Randy Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for the United States; Robert Bradley Scott, Pro Se Defendant.*

The defendant, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2009). The defendant, who pleaded guilty in this court to two unrelated criminal acts, attacks his sentence in the first case, claiming, among other things, that he should have received a sentence reduction in the first case because of his assistance to the government in the prosecution of his codefendants in the second case. Upon review of the record, I find that the § 2255 motion must be denied.

# I

## A.  The 2004 Case.

In the first case, No. 2:04CR00009 (the "2004 Case"), the defendant, Robert Bradley Scott,  was charged in this court with conspiracy to distribute controlled substances, distribution of controlled substances, fraudulently acquiring controlled substances, and traveling in interstate commerce to commit arson.  The government had obtained evidence that Scott had been fraudulently obtaining prescription drugs by forging prescriptions obtained from a doctor's office, and then selling the drugs to others, and that in an attempt to cover up his crimes, Scott had set fire to the doctor's office.

Scott pleaded guilty, pursuant to a written Plea Agreement, on June 29, 2005, to conspiring to distribute Schedule II narcotics, in violation of 21 U.S.C.A. §§ 846 and 841(b)(1)(C) ( (West 1999 & Supp. 2009) (Count One) and traveling in interstate commerce to commit arson to further an unlawful activity, in violation of 18 U.S.C.A. § 1952(a)(2) (West 2000) (Count Eleven).  Under paragraph 4 of the Plea Agreement, the parties stipulated to certain sentencing guideline calculations, including increases in the offense level for Scott's leadership role and for his use of  arson to cover up another crime.  However, the parties also recognized that other guideline provisions might apply at sentencing and that the parties could argue at sentencing for

application of these additional provisions. Under paragraphs 5 and 6 of the Plea Agreement, Scott agreed that any admissions made during the proceedings could be used against him, waiving his right to refuse to answer questions and to seek suppression of evidence obtained from such admissions, and for counsel to be present during debriefing sessions he might have with government agents or attorneys. Under paragraphs 8 and 9 of the agreement, Scott waived his right to appeal the sentence and to collaterally attack his conviction or sentence. Paragraph 14 recognized that the government was under no obligation to move for a reduction of Scott's sentence based on his assistance to law enforcement authorities.

Before accepting Scott's guilty plea, I questioned him and determined that he understood the terms of the Plea Agreement and its consequences, the elements of the charge, and the rights he was waiving by pleading guilty, that a factual basis existed for the guilty plea, and that Scott was entering the plea voluntarily and intelligently. He indicated that he was satisfied with his lawyer and had discussed the Plea Agreement with counsel before signing it. Scott affirmed that no promises had been made to him outside of the terms of the Plea Agreement that caused him to want to plead guilty.

A sentencing hearing was held on November 8, 2005. The Presentence Investigation Report ("PSR") calculated Scott's Total Offense Level under the

advisory guidelines as 25, which included a three-point reduction for acceptance of responsibility, and his Criminal History Category as II, resulting in a sentencing range of 63 to 78 months of imprisonment.

The PSR noted that there was evidence supporting an upward departure and variance in Scott's case. First, based on a number of criminal activities in which Scott had admitted involvement, but for which he had never been prosecuted, the PSR stated that, pursuant to U.S. Sentencing Guidelines Manual ("USSG") § 4A1.3, Scott's Criminal History Category underrepresented the seriousness of his past criminal behavior and the likelihood that he would commit other crimes in the future. Second, the PSR noted that the applicable offense guideline did not take into account the effect of Scott's arson in causing patients to lose access to their past medical records and temporarily to lose access to medical treatment after Scott burned down their doctor's office. Based on this aggravating circumstance, the PSR noted that the court might depart upward under USSG § 5K2.0

At the sentencing hearing, the prosecutor questioned Scott at length about the unconvicted acts detailed in the PSR. Among other things, Scott admitted that in 2002, he and three other individuals had participated in a scheme to burn down a house in order to obtain insurance payments. After hearing Scott's testimony, I overruled Scott's objections to the PSR and adopted it as my findings of fact in the

case.  I found that Scott's Criminal History Category substantially underrepresented his actual criminal history.  I emphasized the fact that his criminal conduct had not only continued for more than ten years, but also included the burning of a medical building without regard to the harm that his act potentially caused to patients whose records were destroyed.  Accordingly, departing upward pursuant to USSG § 4A1.3, I found that he should be sentenced as though he had a Criminal History Category of VI, which gave him a sentencing range of 110 to 137 months.  "[B]ecause of the extreme nature of his conduct in committing this offense," however, I also found that "an additional sentence [was] also required," consisting of an upward variance from the guidelines range.  (Sentencing Tr. 46, Nov. 8, 2005.)  I sentenced Scott to a total of 175 months of imprisonment.  I also imposed a ten-year term of supervised release and ordered Scott to pay restitution in the amount of $311, 839.75.  Pursuant to the Plea Agreement, I dismissed Counts Two, Three and Six of the Superseding Indictment.

Scott filed a timely pro se Notice of Appeal.  The United States Court of Appeals for the Fourth Circuit granted the government's Motion to Dismiss the appeal by order filed March 30, 2006.

B.  The 2007 Case.

In the second case, No. 2:07CR00010 (the "2007 Case"), Scott was charged with conspiracy to commit mail fraud and other offenses, related to the 2002 house-burning insurance scam.  Scott pleaded guilty on February 6, 2008, pursuant to a written Plea Agreement, to conspiracy to commit mail fraud, in violation of 18 U.S.C.A. § 1349 (West Supp. 2009) (Count One).  Under paragraph  4 of this Plea Agreement, the parties stipulated that USSG § 2K1.4(a)(1) applied to Scott's conduct, giving him a Base Offense Level of 24.  Paragraph 5 of the Plea Agreement read:

> The parties stipulate and agree to recommend that any sentence imposed in this case should be ordered to run concurrently to any undischarged sentence from Case No. 2:04CR00009 in the United States District Court for the Western District of Virginia, pursuant to USSG § 5G 1.3, due to the fact that the conduct for which the defendant is now pleading guilty was taken into account by the court in the sentencing of the defendant in the previous case.

Under paragraphs 9 and 10 of the agreement, Scott waived his right to appeal the judgment or the sentence and his right to collaterally attack his conviction or sentence pursuant to § 2255.  Paragraph 15, entitled "Substantial Assistance," included the following statement: "I understand that even if I fully cooperate with law enforcement, the United States is under no obligation to make a motion for the reduction of my sentence."

The "General Understandings" section of the agreement, paragraph 20, included the following statements:

> I have not been coerced, threatened, or promised anything other than the terms of this plea agreement, described above, in exchange for my plea of guilty. . . .

> This writing sets forth the entire understanding between the parties and constitutes the complete plea agreement between the United States Attorney for the Western District of Virginia and me, and no other additional terms or agreements shall be entered except and unless those other terms or agreements are in writing and signed by the parties. This plea agreement supersedes all prior understandings, promises, agreements, or conditions, if any, between the United States and me.

> . . . . I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and I voluntarily agree to it. Being aware of all of the possible consequences of my plea, I have independently decided to enter this plea of my own free will, and am affirming that agreement on this date and by my signature below.

Prior to accepting the plea of guilty, I questioned Scott about his fitness to enter a guilty plea. He indicated that he was twenty-seven years old, that he had completed the eleventh grade in high school, that he was able to read and write, that he had previously received treatment for depression, but had no current medical problems, and that he was not under the influence of alcohol or drugs. I then asked Scott about his Plea Agreement. He indicated that he had initialed each page and signed the Agreement to show that he had read it after an adequate opportunity to review it with his attorney and that he was fully satisfied with his attorney's representation.

Thereafter, the prosecutor reviewed the terms of the Plea Agreement. After explaining paragraph 5, the stipulation and recommendation that Scott's sentence would run concurrent to the sentence in the 2004 Case, the prosecutor stated:

> This [recommendation for a concurrent sentence] is agreed pursuant to the sentencing guideline section 5G1.3, and is based upon the fact that the conduct of which you are now pleading guilty was taken into account by the court in sentencing you in that previous case. However, you understand that is within the sole discretion of the court.

(Plea Tr. 13, Feb. 6, 2008.) Scott affirmed that he understood the terms of the Plea Agreement. I questioned Scott specifically about his waiver of the rights to appeal and to collaterally attack the judgment and sentence, and he indicated that he understood. Scott further denied that anyone had made any promise to him, other than those included in the Plea Agreement, that had made him want to plead guilty.

I then reviewed with Scott the rights he was waiving as a consequence of his guilty plea, the maximum penalties for his offense, the likelihood that he would be ordered to pay restitution, the nature of the sentencing guidelines, and the elements of the charge that the government would have to prove if the case went to trial. Scott indicated that he understood all these matters. The prosecutor reviewed the evidence that the government would have presented at trial, and Scott did not dispute or contest these facts. Based on Scott's responses during the plea hearing, I found Scott to be fully competent to enter a guilty plea, that he was aware of the nature of the charge

and the consequences of his plea, and that his plea was knowing and voluntary and supported by an independent basis in fact as to each of the essential elements of the offense.

Sentencing was held in the 2007 Case on June 12, 2008. There being no objections, I adopted the PSR as my findings of fact. According to the PSR, Scott had a Total Offense Level of 21 and a Criminal History Category of III, resulting in a sentencing range of 46 to 57 months imprisonment. Pursuant to the Plea Agreement, the prosecutor then recommended that the court sentence Scott to a concurrent sentence in this case, because the offense conduct had been part of the prior, then-unconvicted acts that I considered in departing upward from the sentencing guideline range in the 2004 Case, because his troubled childhood led him to commit the instant offense, because Scott had given substantial assistance to the government in the prosecution of his codefendants, and because the crime would not have been solved absent Scott's honesty.

I asked whether the government intended to file a motion for downward departure based on Scott's substantial assistance, and the prosecutor indicated that no such motion would be filed because "[t]he parties entered into the plea agreement . . . that they would recommend a concurrent sentence in this case as opposed to any type of downward departure or motion of that nature." (Sentencing Tr. 5, June 12, 2008.)

I sentenced Scott to 57 months imprisonment to run concurrently with the term of confinement imposed in the 2004 Case.[1]  Pursuant to the Plea Agreement, I dismissed Counts Two and Three.  No appeal was filed.

### C.  Post-Conviction Motions in the 2004 Case.

In October of 2008, Scott filed a pro se motion for reduction of sentence in the 2004 Case, arguing that the government should have made a motion under § 5K1.1 for reduction of sentence in this case, based on his assistance to the prosecution in the 2007 Case.  I denied the motion on the ground that without a motion from the government, the court had no authority to reduce a sentence under Federal Rule of Criminal Procedure 35(b) because of the defendant's assistance to the prosecution.  Scott then filed what he styled as a Petition to Compel Specific Performance.  He alleged that government agents had entered into an oral contract with him, promising that in exchange for his assistance to the government in investigating and prosecuting the 2007 Case, Scott would receive a reduction of the 175-month sentence in the 2004 Case.  In another submission, styled as a Motion for Relief, Scott alleged that he had delayed raising the sentence reduction issue in a timely § 2255 motion, in reliance on investigators' assurances that the reduction in the 2004 Case could not occur until

---

[1]  I also ordered him to pay restitution of $169,095.39, pay a special assessment of $100, and serve a three-year term of supervised release.

after the prosecution of the 2007 Case was completed. I construed Scott's submissions as a § 2255 motion and required him to elect whether or not he wished to proceed with such a motion. I also granted his motion to receive free copies of transcripts from the two cases. Scott then submitted an Amended § 2255 Motion in which he raised the following additional claims.

1.  His attorney provided ineffective assistance by:

    A.  Failing to explain the waiver of § 2255 rights, which resulted in a denial of the defendant's right to appeal his sentence;

    B.  Failing to file a notice of appeal when requested to do so, failing to consult with the defendant as to the benefits or drawbacks of filing an appeal, and failing to inform the defendant that counsel would not file a notice of appeal; and

    C.  Failing to object to violations of the defendant's Fifth Amendment rights during sentencing.

2.  The prosecutor committed misconduct by:

    A.  Arguing for a Base Offense Level of 28, in breach of the Plea Agreement; and

B. Failing to file a Rule 35(b) motion seeking reduction of the sentence based on substantial assistance.

3. He was falsely induced to plead guilty in violation of his Fifth Amendment rights; and

4. The court erred in calculating his sentence.

The government has filed a Motion to Dismiss, arguing that Scott's claims are untimely filed and that he waived his right to file this motion. Scott has responded to the government's motion and the issues are ripe for disposition.

II

A person convicted of a federal offense has one year to file a § 2255 motion, starting from the latest of the following dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)     the date on which the facts supporting the claim or claims
        presented could have been discovered through the exercise
        of due diligence.

28 U.S.C.A. § 2255(f).

A defendant's conviction becomes final (a) when his opportunity to appeal the
district court's judgment expires, (b) when his opportunity to file a petition for a writ
of certiorari expires or (c) when the Supreme Court denies a petition for a writ of
certiorari. *Clay v. United States*, 537 U.S. 522, 525 (2003). A prison inmate's motion
is considered filed as of the date on which he delivered it to the prison authorities for
mailing. Rule 3(d), Rules Governing §2255 Proceedings; *Houston v. Lack*, 487 U.S.
266, 276 (1988).

Equitable tolling of the applicable time limits is available only in "those rare
instances where—due to circumstances external to the party's own conduct—it would
be unconscionable to enforce the limitation period against the party and gross
injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).
Generally, a defendant seeking equitable tolling must demonstrate that he has been
diligently pursuing his rights and that some extraordinary circumstances stood in his
way to prevent him from filing a timely petition. *See Pace v. DiGuglielmo*, 544 U.S.
408, 417 (2005); *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003).

"[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . carry a strong presumption of verity." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotations omitted). Therefore, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221-22. If the court determines that the defendant's allegations in a § 2255 motion, viewed against the record of the plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. *Id.* at 220 (internal quotations and citations omitted).

## A. Untimely Claims.

Scott appealed the 2004 Case, but did not file a petition for a writ of certiorari. Therefore, the judgment became final on June 28, 2006, when his opportunity to pursue a writ of certiorari expired, ninety days after the court of appeals dismissed his appeal on March 30, 2006. *See* Sup. Ct. R. 13(1).[2] On that date, Scott's one-year

---

[2] Scott's pro se motion for reduction of sentence, filed and denied in October 2008, did not affect the finality of the judgment. *See United States v. Sanders*, 247 F.3d 139, 142-43 (4th Cir. 2001) ("Congress did not intend for Fed. R. Crim. P. 35(b) motions to prevent convictions from becoming final for § 2255 purposes.").

period in which to file a § 2255 motion began running; it expired on June 28, 2007. On November 6, 2008, Scott signed and dated the pleadings that I construed together as a § 2255 motion. He filed his Amended § 2255 Motion on April 30, 2009. Thus, all of Scott's claims were filed well outside the statutory limitation period prescribed by § 2255(f)(1).

Scott claims that he delayed filing his § 2255 claims in reliance on verbal promises by government agents after sentencing in the 2007 Case that he would receive a Rule 35(b) sentence reduction in that case, based on his assistance in the prosecution of that case. He argues that these false promises constituted a government-created impediment to his pursuit of a timely § 2255 motion and that he first learned at the June 12, 2008 sentencing in the 2007 Case that no Rule 35(b) motion would be forthcoming in the 2004 Case. Accordingly, he argues, his § 2255 claims should be considered timely under § 2255(f)(2), since he filed them within one year of June 12, 2008.

This argument, however, directly contradicts statements Scott made in his Plea Agreement and in open court during the February 6, 2008 guilty plea hearing, that no such promise existed. The Plea Agreement recommended a concurrent sentence in that case, denied that any other agreements existed between Scott and the government, and expressly provided that the United States was under no obligation

to make a motion for reduction based on substantial assistance. During the plea hearing, Scott indicated that he had read and understood the Plea Agreement and that no one had promised him anything outside the terms of that agreement. Scott fails to offer any reason why I should not find that his sworn, in-court statements are conclusively established as true. *See Lemaster*, 403 F.3d at 220. Because Scott's timeliness argument—that government agents impeded his ability to bring a timely § 2255 motion by promising to file a Rule 35(b) motion—relies on assertions that directly contradict his sworn statements to the court, I find the argument to be patently incredible and thus insufficient to support calculation of the statutory filing period under § 2255(f)(2). For the same reason, I cannot find that the argument supports equitable tolling of the statutory period. *Pace*, 544 U.S. at 417.

Scott knew the facts necessary to bring the majority of his § 2255 claims before June 28, 2007, when the one-year filing period defined by § 2255(f)(1) expired. Because neither § 2255(f)(2) nor equitable tolling apply to Scott's case, I will dismiss his Claims 1A, 1B, 1C, 2A, 3, and 4 as untimely.

Even if Scott could demonstrate some reason why these § 2255 claims are not time-barred, he is not entitled to relief. Scott does not challenge the validity of the guilty plea and the Plea Agreement in the 2004 Case. Therefore, he is bound by the Plea Agreement waiver of his right to pursue a collateral attack of the judgment or the

sentence imposed in this case. *See Lemaster*, 403 F.3d at 220 ("[A] criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary."). His Plea Agreement and statements during the plea hearing indicated his understanding of this waiver and the fact that he would be bound by the agreement's provisions, even if his sentence was higher than he expected at the time of the plea. His current claims that he did not understand the sentence calculations in the agreement or the rights he was relinquishing by accepting it are simply not credible, as they stand in direct contradiction to his plea colloquy statements on which I accepted his guilty plea. *Id.* at 220.

In Claim 1B, Scott alleges that his attorney violated his right to effective assistance of counsel by refusing to file a notice of appeal after Scott asked him to do so and by failing to consult with him about the appeal. Even assuming that this claim falls outside the scope of the Plea Agreement waiver of § 2255 rights, it is without merit. Counsel's alleged refusal did not deprive Scott of the right to appeal, because Scott did in fact file a timely pro se notice of appeal. *See United States v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000) (finding that to establish Sixth Amendment violation based on counsel's failure to appeal, defendant must prove that but for counsel's alleged deficiencies, defendant would have appealed). Moreover, after the government moved for dismissal of the appeal, counsel filed a brief in

response to the motion, arguing that the government's sentencing arguments had breached the Plea Agreement and invalidated the appeal waiver provision and that the court had erred in calculating the enhanced sentence. The mere fact that these arguments did not succeed in convincing the court of appeals to invalidate the appeal waiver and remand for resentencing does not prove that counsel's representation with regard to the appeal was constitutionally deficient. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983) (finding no constitutional deficiency when counsel's representation on appeal served the goal of "vigorous and effective advocacy"); *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (holding that ineffective assistance of counsel claim requires showing of "reasonable probability" that but for counsel's unprofessional errors, result would have been different). Scott fails to demonstrate any reasonable probability that the outcome on appeal would have been different if counsel had taken some other course in representing him at that stage.

## B. No Right to a Rule 35(b) Motion.

Scott asserts that he did not know until June 12, 2008, that the government would not bring a motion for sentence reduction based on substantial assistance. It is true that the plea agreements in both cases included provisions recognizing the possibility, although making no promise, that the government would later move for reduction of Scott's sentence if he provided substantial assistance. Similarly, the

concurrent sentence provision in the Plea Agreement in the 2007 Case does not expressly state that it forecloses any possibility for a sentence reduction motion based on substantial assistance. Until June 12, 2008, Scott could have relied on these facts in support of a reasonable belief that a Rule 35(b) motion was still a possibility. Therefore, I will not dismiss Claim 2B as untimely filed. Rather, I find that Scott is not entitled to relief on this claim.

The decision to make a Rule 35(b) motion for sentence reduction based on a defendant's substantial assistance rests entirely within the discretion of the government. *United States v. Butler,* 272 F.3d 683, 686 (4th Cir. 2001). A district court has authority to review a prosecutor's refusal to file a substantial assistance motion and grant a remedy only if the defendant makes an adequate showing that the refusal was "based on an unconstitutional motive, such as racial or religious animus, or is not rationally related to any legitimate Government end." *Id.* at 686-87 (citing *Wade v. United States*, 504 U.S. 181, 185-86 (1992)).

Scott does not contend that the government's failure to file a Rule 35(b) motion in the 2004 Case arose from any unconstitutional motive, such as racial discrimination. Rather, Scott believes that the concurrent sentence he received in this later case was required by the fact that his sentence in the 2004 Case had already punished him for his criminal conduct in the 2007 Case. Thus, he argues, he received

no benefit whatsoever for his assistance with the latter case. He points to comments from various attorneys and government agents that fueled his hope for a reduction in his overall prison time as a result of his assistance.[3]

On the contrary, the record reflects that Scott received an appropriate benefit for his assistance. The government admits that Scott offered substantial assistance in the prosecution of his codefendants in the 2007 Case.[4] In exchange for these efforts, the government promised to recommend that he receive a fully concurrent sentence, pursuant to USSG § 5G1.3. The only section of this provision that applies to Scott's unique factual situation is § 5G1.3(c), which leaves to the discretion of the court any adjustment of the current sentence, based on a prior undischarged sentence of imprisonment. Thus, as the prosecutor advised Scott during the plea hearing, I was

---

[3] For example, Scott alleges that ATF Agent Jennifer Clark told him that he could not "receive further time on [his] new charges [in the 2007 Case ] because [he] had already been sentenced on those charges in [his] previous charge: [the 2004 Case]." (DE 440-2 at p. 2.) He alleges that he was told the sentence in the 2007 Case would be run concurrent, and the "time-cut applied to [the 2004 Case]. Clark assured [him] of that." (*Id.* at 3.)

[4] Scott also moves the court to conduct an in camera inspection of his testimony before the grand jury in the 2007 Case as proof that he offered substantial assistance. He asserts that comments and assurances by the assistant United States attorney during these proceedings will "reflect on the contractual relationship expressed." The extent of Scott's assistance is not in dispute, and his later, plea colloquy statements show that he did not rely on any promise made outside of the Plea Agreement. Therefore, I will deny Scott's motion (DE 460) for in camera inspection of the grand jury proceedings.

not bound by the Plea Agreement provision recommending a concurrent sentence. Had I determined that Scott's conduct in the 2007 Case warranted punishment in addition to the sentence imposed in the earlier case, I could have imposed such a sentence. Indeed, even had the government filed a motion under Rule 35(b) in the 2004 Case, I would have declined to exercise my discretion to reduce Scott's sentence, based on my knowledge at the time concerning Scott's circumstances and criminal history.

I agreed with the parties, however, that Scott's honesty and cooperation regarding the later charges mitigated against the imposition of any additional prison time. I imposed the recommended concurrent sentence because I saw evidence that Scott had made some changes in his life since the sentencing in the 2004 Case and because he had offered assistance to the government in prosecuting his codefendants in the 2007 Case. Scott did not object to or appeal this sentence, indicating his recognition at the time that he received the benefit for which he bargained. As the government's recommendation of a concurrent sentence fulfilled the bargain negotiated with Scott in exchange for his assistance, the prosecutor's failure to make a Rule 35(b) motion was rationally related to a legitimate governmental interest in abiding by that bargain. *Butler*, 272 F.3d at 686-87.

To the extent that Scott argues in his § 2255 motion that he had been promised an additional sentence reduction, his claims are contrary to his in-court statements during the guilty plea hearing in the 2007 Case. He indicated, under oath, that no one had promised him anything outside the terms of the Plea Agreement, which expressly did not obligate the government to move for a sentence reduction based on substantial assistance. Finding no extraordinary circumstances why Scott's plea hearing statements should not be considered established as true, I conclude that Scott's Claim 2B—that he was promised a sentence reduction—is not credible and must be dismissed. *Lemaster*, 403 F.3d at 220.

## III

For these reasons, I will grant the government's Motion to Dismiss and deny the defendant relief under § 2255.

A separate Final Order will be entered herewith.

DATED: April 14, 2010

/s/ JAMES P. JONES
Chief United States District Judge