IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Case No. 2:04CR00009-001 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **ROBERT BRADLEY SCOTT,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Charlene R. Day, Assistant United States Attorney, Roanoke, Virginia, for the United States; Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant, a federal inmate sentenced by this court, filed a pro se motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), based upon the two-level reduction in the drug guideline ranges adopted by Amendment 782 to the U.S. Sentencing Guidelines Manual ("USSG") and made retroactive by USSG § 1B1.10(d). The United States objected to any reduction in sentence for the defendant and I appointed the Federal Public Defender for this district, who has filed an amended motion on behalf of the defendant. The matter is now ripe for decision.

I.

The court may reduce the term of imprisonment of a defendant made eligible under § 1B1.10, "after considering the factors set forth in section 3553(a) to the

extent that they are applicable." 18 U.S.C. § 3582(c)(2). "Whether to reduce a sentence and to what extent is a matter within the district court's discretion." *United States v. Smalls,* 720 F.3d 193, 195 (4th Cir. 2013). In addition to the § 3553(a) factors, the court may consider public safety concerns as well as the defendant's post-sentencing conduct. USSG § 1B1.10 cmt. 1(B) (ii), (iii).

The defendant was charged in this court with conspiracy to distribute controlled substances, distribution of controlled substances, fraudulently acquiring controlled substances, and traveling in interstate commerce to commit arson. The government obtained evidence that Scott had been fraudulently obtaining prescription drugs by forging prescriptions obtained from a doctor's office, and then selling the drugs to others, and that in an attempt to cover up his crimes, Scott had set fire to the doctor's office.

Scott pleaded guilty, pursuant to a written Plea Agreement, to conspiring to distribute Schedule II narcotics, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) (Count One) and traveling in interstate commerce to commit arson to further an unlawful activity, in violation of 18 U.S.C. § 1952(a)(2) (Count Eleven). A sentencing hearing was held on November 8, 2005. The Presentence Investigation Report ("PSR") calculated Scott's Total Offense Level under the advisory guidelines as 25, which included a three-point reduction for acceptance of

responsibility, and his Criminal History Category as II, resulting in a sentencing range of 63 to 78 months of imprisonment.

The PSR noted that there was evidence supporting an upward departure and variance in Scott's case. First, based on a number of criminal activities in which Scott had admitted involvement, but for which he had never been prosecuted, the PSR suggested that pursuant to U.S. Sentencing Guidelines Manual ("USSG") § 4A1.3, Scott's Criminal History Category underrepresented the seriousness of his past criminal behavior and the likelihood that he would commit other crimes in the future. Second, the PSR noted that the applicable offense guideline did not take into account the effect of Scott's arson in causing patients to lose access to their past medical records and temporarily to lose access to medical treatment after Scott burned down their doctor's office. Based on this aggravating circumstance, the PSR noted that the court might depart upward under USSG § 5K2.0.

At the sentencing hearing, the prosecutor questioned Scott at length about the unprosecuted criminal acts detailed in the PSR. Among other things, Scott admitted that in 2002, he and three other individuals had participated in a scheme to burn down a house in order to obtain insurance payments.

In stating the reasons for Scott's sentence, I found that Scott's Criminal History Category substantially underrepresented his actual criminal history. I emphasized the fact that his criminal conduct had not only continued for more than

-3-

Case 2:04-cr-00009-JPJ   Document 499   Filed 10/29/15   Page 3 of 7   Pageid#: 1386

ten years, but also included the burning of a medical building without regard to the harm that his act potentially caused to patients whose records were destroyed. Accordingly, departing upward pursuant to USSG § 4A1.3, I found that he should be sentenced as though he had a Criminal History Category of VI, which gave him a sentencing range of 110 to 137 months. "[B]ecause of the extreme nature of his conduct in committing this offense," however, I also found that "an additional sentence [was] also required," consisting of an upward variance from the guidelines range. (Sentencing Tr. 46, Nov. 8, 2005.) I sentenced Scott to a total of 175 months of imprisonment, consisting of the same term on each count, to run concurrently. I also imposed a ten-year term of supervised release and ordered Scott to pay restitution for the arson in the amount of $311, 839.75.

Scott filed a timely pro se Notice of Appeal. The United States Court of Appeals for the Fourth Circuit granted the government's Motion to Dismiss the appeal by order filed March 30, 2006.[1]

---

[1] Scott was later charged with conspiracy to commit mail fraud and other offenses, related to the 2002 house-burning insurance scam. Scott pleaded guilty on February 6, 2008, pursuant to a written Plea Agreement, to conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349. In accord with the terms of his Plea Agreement, I sentenced Scott to 57 months imprisonment to run concurrently with the term of confinement imposed in 2005 in this case.

II.

The government argues that because the 175-month sentence was imposed for both the drug offense and the arson crime, the defendant is not eligible for a sentencing reduction. (Gov't's Opp'n to Mot. 3, ECF No. 496.) To the contrary, I find that he is eligible, although in exercising my discretion, I will not reduce his sentence, for the reasons to be explained.

I believe the government's position is mistaken because Amendment 782 would affect the calculation of the guideline range in this case. The defendant's Guidelines range was calculated using the group offense provisions found in § 3D1.4 of the 2002 edition of the Guidelines Manual. Count Group One, for the drug offense, had an adjusted offense level of 26. Count Group Two, for the arson, had an adjusted offense level of 22. The Combined Adjusted Offense Level for these offenses was based on the calculation of "units," as set forth in the table in § 3D1.4. Since Count Group One was the higher offense level, it received one unit, and Count Group Two received an additional unit since it was between 1 and 4 levels less serious than Group One. This resulted in a Combined Offense Level of 28, and a Total Offense Level of 25 once acceptance of responsibility was taken into account. With a Criminal History Category of II, Scott's guideline range was 63 to 78 months, from which the court both departed and varied upward.

Amendment 782 alters these calculations by lowering the Adjusted Offense Level of Count Group One to a 24 from a 26. All other calculations would remain the same, as Count Group One would still receive one unit as the higher offense level, and Count Group Two would also receive one unit for being 1 to 4 levels less serious. Thus, the Combined Offense Level would be 26 and the Total Offense Level would be a 23 instead of a 25, which yields a guideline range of 51 to 63 months.

In determining Scott's amended guideline range, §1B1.10(b)(1) instructs that "the court shall determine the amended guideline range that would have been applicable to the defendant if [the applicable amendment] . . . had been in effect at the time the defendant was sentenced." Further, "the court shall substitute only the [amended guidelines] for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." *Id*. I based Scott's sentence for both the arson and the drug count on the same guideline range, which has been lowered by Amendment 782. Therefore, in my view Scott is eligible for a reduction in his entire sentence, even the arson count, because the arson sentence was based on a guideline range that was affected by Amendment 782. A reduction to a comparable sentence, including an upward departure and variance, would yield a sentence below that originally

imposed.[2]

## III.

While Scott is eligible for reduction in sentence under § 1B1.10, I do not find that one is warranted. I recognize, as pointed out by his counsel, that he has received a mid-level security classification by the Bureau of Prisons and has made efforts while incarcerated to improve his occupational skills and has obtained his GED. Nevertheless, I find that the circumstances of his crimes, and in particular his destruction of the doctor's records in an effort to cover up his prescription fraud, make it unjust to reduce his sentence. As at the time of sentencing, and for my reasons expressed then, I believe that Scott's egregious criminal conduct fully justifies his present sentence.[3]

A separate Order will be entered consistent herewith.

DATED: October 29, 2015

/s/ James P. Jones
United States District Judge

---

[2] Scott seeks a sentence reduction to not more than 160 months, which would likely result in his immediate release. (Am. Mot. 5, ECF No. 498.)

[3] Section 3553(a) requires consideration of the seriousness of the offense and the need to provide just punishment for the crime. 18 U.S.C. § 3553(a)(2)(A).